ORIGINAL
D&F
C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ AUG 1 8 2005 ★
BROOKLYN OFFICE

----------------------------------------x

IN RE: APPLICATION OF IMANAGEMENT
SERVICES LTD. TO TAKE THE TESTIMONY
OF SVETLANA GONCHAROV, SVETLANA
KUDRYAVTSEVA AND GALINA
ORLOVSKAYA FOR USE IN AN ACTION
PENDING IN THE MOSCOW COURT OF
ARBITRATION IN MOSCOW, RUSSIA

**MEMORANDUM AND ORDER**
Case No. Misc. 05-89 (FB)

----------------------------------------x

*Appearances:*
*For the Plaintiff:*
GRANT HANESSIAN, ESQ.
SUSAN R. KNOX, ESQ.
805 Third Avenue
New York, NY 10022

*For the Defendant:*
RICHARD B. FRIEDMAN, ESQ.
SHARI FINKELSTEIN, ESQ.
499 Park Avenue
New York, NY 10022

**BLOCK, District Judge:**

The Bank of New York ("BNY") has moved for vacatur of an order of the Court, dated May 2, 2005, granting the *ex parte* application of Imanagement Services Ltd. ("Imanagement") for discovery pursuant to 28 U.S.C. § 1782. On May 20, 2005 the Court granted a stay of discovery pending briefing and oral argument on BNY's motion. For the reasons set forth below, the Court denies BNY's motion and refers the matter to the assigned Magistrate Judge to determine the scope of discovery that may be sought by Imanagement.

I.

According to the parties' moving papers, on April 25, 2005, Imanagement

1

filed suit against BNY and JSC AB Inkombank ("Inkombank") in a Russian court[1] (the "Russian Action"), alleging a conspiracy between BNY and Inkombank pursuant to which BNY improperly transferred Inkombank's assets out of Russia. Imanagement's complaint in the Russian Action states that it is the assignee to a currency swap agreement with Inkombank, under which Imanagement is currently owed close to $280 million. The complaint alleges that in coordinating the transfer of Inkombank's assets, BNY misused its license to maintain accounts and conduct settlements, to Imanagement's ultimate economic detriment. (Def. Mem. 3)

On April 28, 2005, Imanagement applied for discovery under 28 U.S.C. § 1782, which allows a federal district court to order a person found within its district to provide discovery for use in a foreign proceeding. Imanagement seeks documents and deposition testimony from three individuals residing in Brooklyn whom Imanagement believes to have been witnesses in a criminal proceeding against BNY; two of the individuals are former employees of BNY. (Def. Mem. 4) BNY moves for a protective order denying Imanagement's application under § 1782 on the grounds that the discovery requested by Imanagement is not "for use" in a foreign proceeding, and that even if it were, the Court should deny Imanagement's application in the exercise of its discretion. Alternatively, BNY seeks an order curtailing the scope of discovery or providing for reciprocal discovery.

In support of its motion BNY submitted the affidavit of Vladimir Yarkov, a Professor at Urals State Law Academy in the Russian Federation. Professor Yarkov opines that under the Russian court's rules of procedure, the court will not accept the written

---

[1] The suit was filed in the Moscow City Arbitrazh Court, which is a Russian state court vested with jurisdiction over commercial disputes.

2

testimony of a person residing outside the Russian Federation, except pursuant to an order issued by the Russian court. Imanagement countered with the opinion of Vladimir Sherstyuk, a Professor of Law at Moscow State University, who asserts that written evidence and other documents and materials obtained abroad without the assistance of the Russian court can be accepted as evidence by the Russian court. Following completion of briefing on BNY's motion, the parties submitted a second set of affidavits to the Court, describing a hearing before the Russian court during which the Russian court refused to stay the proceedings in the Russian action pending the discovery requested by Imanagement under § 1782. A translation of the Russian court's ruling appended to BNY's affidavit reflects that the Russian court refused to stay the Russian proceedings because, pursuant to Russian procedural rules, a transcript of witness testimony obtained without an order from the Russian court may not "serve as due evidence." The Russian court declined to opine on the relevance or admissibility of the documents sought by Imanagement because Imanagement could not describe those documents with sufficient specificity.

## II.

Courts are authorized to grant discovery under § 1782 when "(1) . . . the person from whom discovery is sought reside[s] (or [is] found) in the district of the district court to which the application is made, (2) . . . the discovery [is] for use in a proceeding before a foreign tribunal, and (3) . . . the application [is] made by a foreign or international tribunal or any 'interested person.'" *In re Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (quoting *In re Application of Gianoli Aldunate*, 3 F.3d 54, 58 (2d Cir. 1993)). When a foreign evidentiary proceeding has concluded and the foreign tribunal will no longer accept any

evidence, the discovery sought cannot be "for use" in the foreign proceeding. *See In re Application of Euromepa*, 154 F.3d 24, 29 (2d Cir. 1998); *In re Application of Ishihara Chemical Co., Ltd.*, 251 F.3d 120, 125 (2d Cir. 2001). BNY does not dispute that Imanagement is an "interested person" and that the parties from whom discovery is sought reside in this district. BNY argues, however, that the evidence sought by Imanagement would be inadmissible in the ongoing Russian Action, and that it therefore cannot be "for use" in a foreign tribunal.

The Court concludes that § 1782 contains no requirement that particular evidence be admissible in an ongoing foreign proceeding. Contrary to BNY's assertions, the Second Circuit has never held that in order for discovery sought pursuant to § 1782 to be "for use" in a foreign proceeding, it must be admissible under the rules of the foreign tribunal. In both *Euromepa*, 154 F.3d at 29, and *Ishihara Chemical Co.*, 251 F.3d at 125, the foreign proceedings had concluded and the Second Circuit found that because the tribunals would no longer accept *any* evidence, the discovery sought therefore could not be "for use" in a foreign proceeding. The Court's decisions in these cases do not direct the district court to undertake an analysis of the admissibility of each piece of evidence sought when there is an ongoing foreign proceeding in which the foreign tribunal will accept and consider evidence submitted by the parties. *See Europmepa*, 154 F.3d at 27 ("In analyzing the second element... we have, as discussed below, previously focused on two questions: (1) whether a foreign proceeding is adjudicative in nature; and (2) when there is actually a foreign proceeding.").

Moreover, construing § 1782's "for use" provision to contain an admissibility requirement would run counter to the Second Circuit's admonition against reading

4

additional barriers into the plain language of § 1782. *See In re Application of Gianoli Aldunate*, 3 F.3d 54, 59 (2d Cir. 1993) (declining to read a foreign discoverability requirement into the plain language of § 1782 and observing that "[a]s we recently made clear in *Malev*, we are not free to read extra-statutory barriers to discovery into section 1782.") (citing *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992). Such a construction would also require district courts to predict or construe the procedural substantive law of the foreign jurisdiction, which would place a "significant burden on the litigants and the federal district courts," and "would seem to exceed the proper scope of section 1782." *Euromepa*, 51 F.3d at 1099 (citing *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 136 (3d Cir. 1985); Walter B. Stahr, *Discovery Under 28 U.S.C. § 1782 for Foreign and International Proceedings*, 30 Va. J. Int'l. L. 597, 613 (1990)). The Court, therefore, agrees with those courts that have considered the issue and concludes that discovery assistance pursuant to § 1782 is not dependent upon the ultimate admissibility in the foreign jurisdiction of the evidence sought. *See, e.g., In re Application of Grupo Qumma*, 2005 WL 937486 at * 2 (S.D.N.Y. 2005) (holding that court was statutorily authorized to grant discovery request and stating that the "for use" requirement was not "limited to the actual receipt of materials into evidence in the foreign proceedings. It is sufficient that the evidence will be offered by Qumma; that constitutes 'for use.'").[2] Because the evidence

---

[2]*See also In re Application of Asta Medica*, S.A., 981 F.2d 1, 7, n.6 (1st Cir. 1992) ("The district court need not explore whether the information the applicants seek is admissible in the foreign jurisdiction or other issues of foreign law."); *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 138 (3d Cir. 1985) ("Nor can concern for the ultimate admissibility of the discovered material be argued as a limit on section 1782 orders."); *In re Request for Judicial Assistance from the Seoul District Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) ("[F]ederal courts, in responding to [§ 1782] requests, should not feel obliged to involve themselves in technical questions of foreign law relating to . . . the

sought by Imanagement is "for use" in a proceeding before a foreign tribunal, the Court is accordingly authorized to grant discovery assistance under § 1782.

### III.

Although Imanagement has demonstrated that it meets the statutory requirements for judicial assistance under § 1782, the Court's inquiry does not end there. Section 1782 "authorizes, but does not require, a federal district court to provide judicial assistance to foreign or international tribunals or interested people." *Intel Corp. v. Advanced Micro Devices, Inc.*, 124 S. Ct. 2466, 2473 (2004). Once the applicant has demonstrated compliance with the statute's requirements, therefore, the district court must exercise its discretion in determining whether to grant the requested relief. The Supreme Court has identified four factors the district court should consider in the exercise of its discretion: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway, and the receptivity of the foreign government or court to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of the foreign country; and (4) whether the request is unduly intrusive or burdensome. *See Intel*, 124 S. Ct. at 2483.

With respect to the first factor, the Supreme Court has noted that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is

---

admissibility before such tribunals of the testimony or material sought."); *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988) ("a district court generally should not decide whether the requested evidence will be admissible in the foreign court") (citing *John Deere*, F.2d at 136).

6

sought from a nonparticipant in the matter arising abroad." *Id.* By contrast, the parties from whom Imanagement seeks discovery are not parties to the Russian Action, and because they "may be outside the foreign tribunal's jurisdictional reach ... their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* The first factor therefore clearly weighs in favor of granting an order to allow Imanagement to collect evidence from non-parties located in this district.

BNY argues that the second factor identified by the Supreme Court weighs against granting the requested assistance. While the admissibility of evidence is not a statutory barrier to the authorization of discovery assistance under § 1782, it may appropriately be considered by the district court in determining whether to exercise its discretion. *See Intel*, 124 S. Ct. at 2483 (stating that the second factor a court should consider is the nature of the foreign tribunal, the character of the proceedings underway, and the receptivity of the foreign government or court to U.S. federal-court judicial assistance ); *Grupo Qumma*, 2005 WL 937486 at * 2 ("admissibility of the evidence . . . is a relevant consideration, for . . . this Court should take into account the 'receptivity' of the foreign court to U.S. federal-court assistance and the 'nature, attitude, and procedures' of the foreign jurisdiction."). Nonetheless, in exercising its discretion, "a district court's inquiry into the discoverability of requested materials should consider only *authoritative proof* that a foreign tribunal would reject evidence obtained with the aid of § 1782. Such proof, as embodied in a forum country's judicial, executive or legislative declarations that *specifically address the use of evidence gathered under foreign procedures*, would provide helpful and appropriate guidance to a district court in the exercise of its discretion. Absent this type of clear directive . . . a district court's ruling should be informed by section 1782's

7

overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'" *Euromepa*, 51 F.3d at 1100 (citing S. Rep. No. 1580, 88th Cong., 2d sess. (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3788) (emphasis added). In the absence of such proof, "it is unwise – as well as in tension with the aims of section 1782 – for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting, and perhaps, biased interpretations of foreign law." *Europmepa*, 51 F.3d at 1099-1100.

BNY does not assert that the Russian court has asked this Court to deny Imanagement's discovery request or otherwise explicitly signaled its general lack of receptivity to outside discovery assistance. *Cf., e.g., Schmitz v. Bernstein, Liebhard & Lifshitz, L.L.P.*, 376 F.3d 79, 84-85 (2d Cir. 2004) (holding that the district court had not abused its discretion in denying a request for discovery under 1782 where district court was "faced with specific requests from the German Ministry of Justice and the Bonn Prosecutor to deny petitioners the discovery they sought at [the] time"). Instead, BNY argues – based upon its expert's affidavit and the Russian court's ruling denying a stay on the grounds that any written testimony would not be admitted in the absence of a Russian court order – that the deposition transcripts would be inadmissible under Russian procedural rules regarding the submission into evidence of witness testimony, and that this signals a lack of "receptivity of the foreign . . . court . . . to U.S. federal-court judicial assistance." *Intel*, 124 S. Ct. at 2483. The Court disagrees.

As discussed above, both parties have submitted conflicting legal opinions and affidavits regarding the admissibility of the proposed discovery. BNY's expert affidavit addressing the admissibility of witness testimony under Russian rules of

8

procedure is insufficient to constitute "authoritative proof" that a Russian court would reject the evidence sought by Imanagement if gathered pursuant to § 1782. *See Esses*, 101 F.3d at 876-77 (rejecting general propositions from treatises on English probate law as authoritative and noting that the examples of "authoritative proof" of offense to a foreign jurisdiction discussed in *Europmepa* entailed "explicit pronouncements by courts allowing or enjoining discovery in foreign jurisdictions). The Court recognizes, however, that the statement by the Russian court regarding the inadmissibility in the Russian action of any written testimony gathered without a Russian court order more closely approximates the type of "authoritative proof" regarding receptivity to evidence gathered in the U.S. that district courts should consider in exercising their discretion under § 1782. *See Euromepa*, 51 F.3d at 1100. Nonetheless, although the Russian court's statement may be taken as proof that it would not accept the deposition transcripts as written testimony, Imanagement's most recent affidavit states that Imanagement does not intend to introduce the transcripts as testimony, but as "other documents and materials" which may be submitted as evidence under Russian procedural rules. The Russian court's ruling therefore cannot be said to constitute "authoritative proof" regarding the admissibility of the transcripts if not offered as testimonial evidence.

Furthermore, Imanagement states that it will use the deposition testimony as a basis to identify relevant documents and other evidence it may seek from BNY or other parties. There is no indication, let alone any authoritative proof, that the Russian court would reject as evidence any documents gathered with the aid of the witnesses' deposition testimony, nor that it would reject such testimony if offered in support of a request by Imanagement for a Russian court order for the production of particular documents or other

9

evidence. The Court therefore cannot say that the Russian court's statement constitutes authoritative proof that the Russian court would reject evidence gathered with the assistance of discovery under § 1782, or that the refusal to admit the deposition transcripts as testimonial evidence signals a "lack of receptivity" to "U.S. federal-court judicial assistance" such that the Court should use its discretion to deny Imanagement's request for discovery. *Intel*, 124 S. Ct. at 2483.

The Court also declines to undertake a "speculative foray," *Europmepa*, 51 F.3d at 1099-1100, into unfamiliar legal territory in an attempt to determine the extent to which a Russian court would be receptive to documentary or testimonial evidence gathered pursuant to outside discovery assistance under § 1782. Because BNY has not offered "authoritative proof" that the Russian court would reject any use of evidence gathered pursuant to § 1782, and because the Russian court can protect itself from the effects of any unwanted discovery order by simply refusing to admit the evidence, the Court determines that the second factor does not weigh against an exercise of discretion in Imanagement's favor.[3]

---

[3] As the Second Circuit has observed, a foreign court can easily protect itself from the effects of any discovery order by a U.S. district court that inadvertently offends foreign practice, either by enjoining a party from pursuing discovery in a manner that violates the foreign country's judicial policies, or by simply refusing to consider any evidence a party gathers by an unacceptable practice. *See Euromepa*, 51 F.3d. at 1101. "Since foreign courts could always rule upon the propriety of reliance on evidence obtained through the cooperation extended by American courts when it was presented to them, the drafters of section 1782 regarded it as both unnecessary and undesirable to let the propriety of discovery with the aid of an American court depend on discoverability and admissibility under foreign law." *Id.* at 1101 (quoting Hans Smit, *Recent Developments in International Litigation*, 35 S. Tex. L. Rev. 215, 235-36 (April 1994)).

With respect to the third consideration identified by the Supreme Court, BNY argues that because written testimony from witnesses outside Russia is inadmissible absent a court order, and because Imanagement sought the *ex parte* order without first requesting permission from the Russian court, Imanagement's request for discovery assistance under § 1782 demonstrates an attempt to circumvent the procedural rules of the Russian court. This argument is without merit. As an initial matter, § 1782 does not contain an exhaustion requirement that would impose upon an applicant a duty to first seek the requested discovery from the foreign court. *See Malev*, 964 F.2d at 100. The fact that Imanagement requested relief under 1782 without first seeking an order from the Russian court therefore does not suggest that in doing so Imanagement was attempting to circumvent the rules of the foreign tribunal. Furthermore, as discussed above, BNY has not offered "authoritative proof" that Russian law prohibits either the gathering of evidence pursuant to § 1782 or its subsequent use or admission. Moreover, because the parties do not dispute that the substantive discovery sought would be available were all parties located in Russia, and BNY asserts only that the Russian court would not *admit* deposition testimony gathered under § 1782 at trial, it is difficult to understand how allowing discovery under § 1782 would circumvent the "proof-gathering" restrictions of the Russian court. *See Intel*, 124 S. Ct. at 2483.[4] As discussed above, the Russian court is free to protect any relevant policies

---

[4]Even assuming that Russian law did not allow the discovery sought in this case (as opposed to limiting its admissibility as evidence) this alone is insufficient to require denial of a 1782 request in the exercise of the district court's discretion. *See Intel*, 124 S. Ct. 2480 (rejecting a categorical foreign discoverability requirement); *In re Application for Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (stating that while a determination of discoverability under the laws of the foreign jurisdiction is a useful tool in the exercise of discretion under 1782, "this language was not meant to authorize denial of discovery . . . solely because such discovery is

by declining to admit any evidence gathered pursuant to means it deems unacceptable.[5] Finally, it is unclear whether the Russian court has the authority to order discovery from non-parties who reside outside the court's jurisdiction, and resort to § 1782 may be the only avenue by which Imanagement can obtain the discovery it seeks. The request for assistance may reflect a reasonable effort to overcome a technical discovery limitation. The Court therefore declines to hold that Imanagement's request amounts to an attempt to circumvent Russian procedural rules such that discovery assistance under § 1782 should be denied in the exercise of the Court's discretion.[6]

---

unavailable in the foreign court, but simply to allow consideration of foreign discoverability (along with many other factors) when it might otherwise be relevant to the § 1782 application."); *see also In re Application of Bayer*, 146 F.3d 188, 195 (3d Cir. 1998) (stating, in allowing discovery of material under § 1782 that would only be discoverable in the foreign country pursuant to a court order: "the comity concerns we expressed against use of U.S. discovery procedures to evade the limitations placed on domestic pre-trial disclosure by foreign tribunals are applicable only when the *substance* of the discovery is objectionable.") (citing *Metallgesellschaft*, 121 F.3d at 80) (emphasis added).

[5]*See supra* n.2.

[6]In its reply brief, BNY suggests that Imanagement is not prosecuting the Russian action in good faith. BNY states that Imanagement provided the *ex parte* order to the Russian court and requested a stay of the Russian action pending completion of discovery proceedings in the United States, but that Imanagement has not sought any discovery from parties located in Russia since commencing the Russian action. (Pl. Reply Mem. 8) BNY further asserts that because Imanagement's action is "clearly" time-barred, and the contracts upon which it is suing are unenforceable as a matter of law, "it is difficult to believe that Imanagement seriously contemplates presenting its case on the merits." *Id*. at 9. BNY suggests that Imanagement may be pursuing discovery in the United States for some purpose other than the Russian action. *Id*. The Court recognizes that it should reject a § 1782 request if it suspects that it is a "fishing expedition" or a vehicle for harassment. *See Metallgesellschaft*, 121 F.3d at 79 (citing *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988). The Court finds, however, that it was entirely reasonable for Imanagement to seek a stay of the underlying action pending resolution of its discovery

With respect to the fourth factor, the Supreme Court in *Intel* recognized that "unduly intrusive or burdensome requests may be rejected or trimmed." 124 S. Ct. at 2483. BNY argues that if the *ex parte* order is not vacated in its entirety, it should be modified to limit the scope of the requests and to implement restrictions to maintain the confidentiality of witness testimony and documents produced. The Court's *ex parte* order directs the deposition of three parties whom Imanagement believes possess material information regarding the underlying Russian action. The order also directs the production of documents related to, *inter alia*, all communications between BNY and various parties, all documents concerning any account held at BNY on behalf of Inkombank, and all documents concerning transfers effectuated through BNY on behalf of Inkombank since January 1, 1997. Other than the specifications related to the document requests, there are no scope restrictions on the depositions of the individuals. The Court agrees that because Imanagement's document requests encompass communications between Inkombank and BNY, there may be confidentiality concerns that should be addressed before discovery is permitted. The Court, therefore, refers the matter to the assigned Magistrate Judge to resolve the residual discovery disputes in accordance with this decision, including any scope limitations or restrictions to maintain the confidentiality of documents and

---

application under § 1782, and that it is further reasonable that Imanagement would not seek additional discovery in Russia while its motion for a stay was pending. Although BNY argues that Imanagement's complaint is subject to such fatal substantive and procedural difficulties as to render it frivolous or pretextual, the Court does not have sufficient knowledge of Russian law to determine whether, based solely on BNY's representations regarding its anticipated defenses, this is the case, and there are no other factors which lead the Court to believe that the Russian action is so clearly pretextual or initiated in bad faith that discovery assistance under § 1782 must be denied.

testimony. In resolving discovery disputes, the Magistrate Judge will be guided by the procedures and practices governing discovery in the Federal Rules of Civil Procedure, as provided in § 1782, unless the Magistrate Judge decides to prescribe "the practice and procedure of the foreign country or the international tribunal." *In re Ishihara Chemical Co., Ltd.*, 121 F. Supp. 2d 209, 225 (E.D.N.Y. 2000) (citing 28 U.S.C. § 1782), *vacated as moot*, 251 F.3d 120 (2d Cir. 2001). *See also Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) ("[U]nder the terms of the statute, the discovery process is generally guided by the Federal Rules of Civil Procedure.").

## IV.

Finally, BNY argues that the Court should condition the grant of Imanagement's discovery application upon Imanagement's providing reciprocal discovery. Grants of discovery under § 1782 are not contingent on the requesting party's acquiescence to reciprocal discovery. "Congress intended that [§ 1782] would provide an avenue for judicial assistance to foreign or international tribunals whether or not reciprocal arrangements existed. . . . [§ 1782] is a one-way street. It grants wide assistance to others, but demands nothing in return. . . . [A] district court [is] free to grant [a party's] request without assuming responsibility for supervising [the opposing party's discovery]." *Malev*, 964 F.2d at 101-02. The Court declines to impose reciprocal discovery obligations as a condition to granting Imanagement's § 1782 request. BNY has not identified any documents or witnesses within this district that it seeks to discover; in the event BNY does identify such evidence, it is free at that time to file its own request for discovery under § 1782.

## CONCLUSION

The Court holds that it is authorized to grant Imanagement's discovery request under § 1782, and in considering the factors set forth by the Supreme Court to guide its discretion, determines that a grant of discovery will further the "'twin aims' of § 1782, 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Esses*, 101 F.3d at 876 (quoting *Malev*, 964 F.2d at 100). The stay is hereby lifted and the matter referred to the Magistrate Judge for resolution of the residual discovery issues.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Brooklyn, New York
August 16, 2005